```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
SHH HOLDINGS, LLC,                     :
                                       :      Case No. 1:19-cv-2900
        Plaintiff,                     :
                                       :
vs.                                    :      OPINION & ORDER
                                       :      [Resolving Docs. 20 & 21]
ALLIED WORLD SPECIALTY                 :
INSURANCE COMPANY,                     :
        Defendant.                     :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

From April 2019 to April 2020, Plaintiff SHH Holdings, LLC, held a claims-made directors & officers, employment practices, and fiduciary liability insurance policy with Defendant Allied World Specialty Insurance Company. During the policy period, in August 2019, former SHH employees sued Plaintiff SHH for retaliation. SHH filed a claim with Allied World and asked for defense and indemnity.

Allied World denied coverage, claiming the retaliation claims were related to a January 2017 Department of Justice False Claims Act investigation against SHH that SHH failed to disclose when applying for the Allied World policy.

After Allied World denied coverage, SHH defended the retaliation suit and later settled the employee retaliation claims for $2.2 million. In the present lawsuit, SHH seeks reimbursement for the settlement and its legal fees. It brings a breach of contract claim and a declaratory judgment action.

Responding, Allied World argues that SHH failed to disclose the DOJ investigation in its insurance application and says that this failure defeats coverage. SHH counters that the insurance application did not unambiguously require them to disclose the DOJ investigation

Case No. 1:19-cv-2900
Gwin, J.

and claims that Allied World breached both the insurance policy and its duty of good faith in denying coverage.

The parties have now filed dueling summary judgment motions. They agree that this Court can decide the case on the stipulated evidentiary record and briefs.

Plaintiff SHH moves for partial summary judgment on the policy breach question. Defendant Allied World moves for summary judgment on all claims. For the reasons stated below, the Court **GRANTS** Plaintiff SHH's motion for partial summary judgment and **GRANTS IN PART** and **DENIES IN PART** Defendant Allied World's motion for summary judgment on all claims.

## I. Background

On November 1, 2016, a False Claims Act qui tam suit was filed under seal in the Eastern District of Virginia.[1] The sealed complaint stated that Plaintiff SHH, its subsidiaries, and SHH-affiliated nursing facilities violated the False Claims Act by repeatedly claiming Medicare reimbursement for unreasonable, unnecessary, or non-existent patient medical costs.[2] The sealed complaint also claimed that SHH had retaliated against employees who internally reported the fraudulent billing practices.[3]

On January 20, 2017, Plaintiff SHH, still unaware of the sealed qui tam complaint, received a Civil Investigative Demand from the DOJ.[4] The Investigative Demand informed SHH of a pending False Claims Act investigation for fraudulent billing.[5] In addition to other inquiries, the Investigative Demand requested recently terminated SHH employee

---

[1] *United States ex rel Wright v. Saber Healthcare Holdings, LLC*, Case No. 2:16-cv-640 (E.D. Va.).
[2] Doc. 39.
[3] *Id.*
[4] *Id.*
[5] *Id.*

-2-

Case No. 1:19-cv-2900
Gwin, J.

information.[6] However, the Investigative Demand did not mention the sealed complaint retaliation allegations.[7] On July 17, 2017, Plaintiff SHH responded fully to the Investigative Demand.[8]

Nearly two years later, on April 15, 2019, Plaintiff SHH applied to Defendant Allied World for a directors & officers, employment practices, and fiduciary liability policy.[9] SHH and Allied World had no previous business relationship.[10]

The insurance application asked Plaintiff SHH various questions about pending matters that could lead to claims under the claims-made Allied World policy.[11]

Application Question 1 asked SHH to "provide full details of all inquiries, investigations, administrative charges, claims, and lawsuits filed within the last three (3) years against [SHH], any Subsidiary, any Executive or other entity proposed for any coverage for which [SHH] is applying."[12] Despite the DOJ False Claims Act investigation, SHH indicated that no such matters were pending.[13]

Application Question 2 asked whether "[SHH], any Subsidiary, any Executive or other entity proposed for coverage kn[ew] of any act, error or omission which could give rise to a claim, suit or action under any coverage part of the proposed policy."[14] SHH again indicated that it was not aware of any responsive information.[15]

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Doc. 44 at 191–92.
[12] *Id.* at 191.
[13] *Id.*; Doc. 39.
[14] Doc. 44 at 192.
[15] *Id.*

-3-

Case No. 1:19-cv-2900
Gwin, J.

In the same section with these questions, the Application set forth an exclusion that was later incorporated into the policy:

> It is agreed that with respect to questions [1 and 2] . . . if such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), information or involvement exists, then such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), and any inquiry, investigation, administrative charge, claim, or lawsuit arising therefrom or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage.[16]

Defendant Allied World approved Plaintiff SHH's application and issued a claims-made policy effective from April 17, 2019, to April 17, 2020.[17] Under the policy, Allied World agreed to indemnify SHH for insured policy period claims against SHH.

During the policy period, the presiding qui tam action judge partially unsealed the False Claims Act lawsuit, and SHH received a copy of the complaint.[18] Though SHH had already effectively settled the fraudulent billing issue with the DOJ, SHH learned for the first time of the SHH employee retaliation claims after receiving the complaint.[19]

On September 11, 2019, SHH submitted a claim with Allied World for the retaliation lawsuit, seeking reimbursement of legal costs under the policy.[20] In two letters issued on October 10 and 15, 2019, Allied World denied coverage and took the position that SHH's failure to disclose the DOJ investigation defeated coverage because of the Application Exclusion.[21]

---

[16] *Id.*
[17] Doc. 39.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*

-4-

Case No. 1:19-cv-2900
Gwin, J.

On December 16, 2019, following Allied World's coverage denial, SHH sued Allied World, requesting money damages for Allied World's policy breach and a policy-clarifying declaratory judgment.[22] SHH also sued Allied World for breaching its good faith duty by unreasonably denying retaliation claims coverage.[23]

After this lawsuit was filed, SHH hired counsel for the qui tam action.[24] On March 30, 2020, SHH settled the employee retaliation claims for $2.2 million.[25] On April 14, 2020, SHH separately settled the False Claims Act claims with the government for $10 million.[26] The qui tam action was dismissed on April 20, 2020.[27]

On August 24, 2020, SHH filed a partial summary judgment motion in this Court on its monetary damages and declaratory relief breach of contract claims.[28] That same day, Allied World filed an all-claims summary judgment motion.[29] On September 7, 2020, both parties filed their respective oppositions.[30]

At the October 13, 2020 final pretrial conference, the parties agreed to submit the case to the Court using stipulated facts and the already-submitted summary judgment briefing.[31] The parties filed a joint stipulated facts statement on October 15, 2020.[32] On October 22, 2020, the Court heard oral argument.[33]

The Court now turns to the parties' respective summary judgment motions.

---

[22] Doc. 1.
[23] *Id.*
[24] Doc. 39.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] Doc. 21.
[29] Doc. 20.
[30] Doc. 23; Doc. 24.
[31] Doc. 39.
[32] *Id.*
[33] Doc. 45.

-5-

Case No. 1:19-cv-2900
Gwin, J.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] Because there is no material fact dispute here, the Court need only apply governing law to determine whether Plaintiff SHH or Defendant Allied World is entitled to summary judgment. Because this Ohio insurance dispute comes before the Court based on diversity jurisdiction, Ohio law applies.[35]

Under Ohio law, insurance policies are interpreted according to their plain language.[36] If an insurance policy is ambiguous, the policy is construed strictly against the insurer.[37] "[I]t will not suffice for [the insurer] to demonstrate that its interpretation is more reasonable than the policyholder's."[38] Rather, to defeat coverage, the insurer must show that its "interpretation is *the only one* that can fairly be placed on the language in question."[39] If the policy is ambiguous, and the insured's interpretation is reasonable, the insured's interpretation prevails.[40]

Good faith claims, however, reverse the insured-friendly breach of contract standard. In evaluating whether an insurer breached its good faith policy administration duty, the Court asks only whether the insurer had a "reasonable justification" for denying a claim.[41]

---

[34] Fed. R. Civ. P. 56(a).
[35] *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013).
[36] *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332–33 (Ohio 2001).
[37] *Id.* at 333.
[38] *Id.* (quotation omitted).
[39] *Id.* at 332 (emphasis added) (quotation omitted).
[40] *Id.* at 332–33.
[41] *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399–400 (Ohio 1994).

-6-

Case No. 1:19-cv-2900
Gwin, J.

Crucially, a "reasonable justification" need not be a correct one.[42] And the reasonableness of the insurer's denial is not measured against the only-reasonable-interpretation standard governing Ohio insurance contracts.[43] Rather, the court determines on a clean slate whether the insurer had reasonable coverage denial grounds.[44]

### III. Discussion

The principal issue before the Court is the contractual effect of Plaintiff SHH's failure to disclose the January 2017 False Claims Act Investigative Demand to Defendant Allied World in its April 2019 insurance application.[45]

Plaintiff SHH does not ask for indemnity or defense for the settlement payment SHH made to resolve the government's false claims demand. SHH instead seeks reimbursement for the retaliation claim settlement payment only.

Allied World argues that SHH's responses to Application Questions 1 and 2 stop coverage of the later-revealed retaliation claims. In response, SHH argues that Application Questions 1 and 2 did not unambiguously require disclosure of the Investigative Demand and argues that the policy therefore does not bar retaliation claim coverage.

This case involves two reasonable interpretations of an insurance policy. But, for each of the claims involved, the views do not compete on a level playing field. For SHH's monetary and declaratory breach of contract claims, Ohio law gives debatable cases to the

---

[42] *Retail Ventures, Inc. v. Nat. Union Fire Ins. Co. of Pitt.*, 691 F.3d 821, 834 (6th Cir. 2012) (citing *Tokles & Son, Inc. v. Midw. Indemn. Co.*, 605 N.E.2d 936, 943 (Ohio 1992)).
[43] *Id.*
[44] *Id.*
[45] At oral argument, Allied World acknowledged its abandonment of the other legal theories expressed in its Motion for Summary Judgment [Doc. 20].

Case No. 1:19-cv-2900
Gwin, J.

insured.[46] Conversely, for SHH's breach of good faith claim, Ohio law gives debatable cases to the insurer.[47]

Because SHH reasonably read Application Questions 1 and 2 to not require disclosure of the January 2017 Investigative Demand, SHH is entitled to summary judgment on its monetary and declaratory breach of contract claims. Similarly, because Allied World reasonably read the same provisions to bar coverage, Allied World is entitled to summary judgment on SHH's good faith claim.

### A. The Breach of Contract and Declaratory Judgment Claims

1. Application Question 1

Application Question 1 asked SHH to "provide full details of all inquiries, investigations, administrative charges, claims, and lawsuits filed within the last three (3) years against [SHH], any Subsidiary, any Executive or other entity proposed for any coverage for which [SHH] is applying."[48]

As relevant here, SHH applied for employment practices liability insurance. The issued employment practices policy gave no coverage for United States false claims demands.

SHH argues that Question 1 asks whether SHH received inquiries or investigations within the preceding three years but limited to those related to "any coverage for which the Applicant is applying." Plaintiff SHH says that the government's overbilling inquiry was unrelated to the employment practices liability policy.

---

[46] *Andersen*, 757 N.E.2d at 332–33.
[47] *Retail Ventures, Inc.*, 691 F.3d at 834 (citing *Tokles & Son, Inc.*, 605 N.E.2d at 943).
[48] Doc. 44 at 191.

-8-

Case No. 1:19-cv-2900
Gwin, J.

With this interpretation, SHH argues that the January 2017 False Claims Act Investigative Demand was outside Question 1's scope because the Investigative Demand was not an "inquir[y], investigation[], administrative charge[], claim[], [or] lawsuit[]" related to the employment practices liability coverage that SHH was applying for.

Plaintiff SHH used the same application to apply for other claims-made insurance. With the same application, SHH also applied for directors & officers ("D & O") liability coverage. The D & O policy provided coverage for "Regulatory Wrongful Act[s]" that included "misstatement, misconduct, [or] fraud . . . committed by an Insured in the performance of . . . [a] Medicaid [or] Medicare . . bill, claim, cost report or data submission[]."[49]

The application required SHH to identify the government's January 20, 2017 Investigative Demand, at least with regard to SHH's application for D & O coverage. Even though the D & O coverage and the employment practices liability coverage were both elements of the same policy, SHH says the employment practices liability insurance was independent and says that SHH could not know of the employee wrongful termination claims when it completed the application.

SHH seems to argue that its Investigative Demand response could impact the D & O coverage but should not impact the employment practices liability coverage.

Allied World disagrees with SHH's Question 1 interpretation. Allied World says that Question 1 required SHH to identify all inquiries and investigations for all coverages sought,

---

[49] *Id.* at 330–31.

-9-

Case No. 1:19-cv-2900
Gwin, J.

not just inquiries and investigations related to employment practices covered under the employment practices liability policy segment.

To repeat, Question 1 asks:

[P]lease provide full details of all inquiries, investigations, administrative charges, claims and lawsuits filed within the last three (3) years against the Applicant, any Subsidiary, any Executive or other entity proposed for any coverage for which the Applicant is applying. If claims have been filed, please attach complete details regarding those matters including current status of claim and ultimate resolution of claim if applicable.[50]

Allied World argues that the "proposed for any coverage" clause modifies only the "any Subsidiary, any Executive or other entity" clause. If given that reading, Question 1 calls for information about *all* "inquiries, investigations, administrative charges, claims, and lawsuits" against the applicant, subsidiaries, executives, and any other entity to be insured, regardless of the inquiries' relevance to the policy coverage type to be issued.

From a syntactic perspective, Allied Life's interpretation has an edge. A well-recognized construction cannon suggests that a modifier applied to something other than a parallel series of nouns, like Application Question 1, normally applies only to the nearest reasonable referent.[51]

Here, "proposed for any coverage" is the modifier at issue, and Question 1's *overall* structure is not a parallel series of nouns or verbs. Thus, "proposed for any coverage" would ordinarily apply only to the nearest referent—"any Subsidiary, any Executive or other entity." Adopting this reading, Plaintiff SHH would be required to disclose the Investigative Demand,

---

[50] *Id.* at 191.
[51] *See Lockhart v. United States*, 136 S. Ct. 958, 963 (2016); A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012) ("When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.").

-10-

Case No. 1:19-cv-2900
Gwin, J.

as it undoubtedly constitutes an "inquiry" made to insurance applicant SHH within three years of its application.

But the nearest reasonable referent cannon, like all interpretive cannons, "is not an absolute and can assuredly be overcome by other indicia of meaning."[52]

And here such indicia support SHH's proposed reading.

Allied World's Question 1 reading leaves the "all inquiries" noun string unqualified. This means that the Question would require disclosure of "administrative charges, claims, and lawsuits" completely unrelated to any ensuing policy. Allied World's reading, for instance, would require an SHH executive to disclose a local zoning citation for an unpermitted shed on his or her property. For the same reason, it would also require a covered SHH employee to disclose his or her divorce or child custody proceedings. These strange results support the "proposed for any coverage" clause's role as a full-question modifier.

Plaintiff SHH could reasonably read Question 1 as requiring disclosure of only those matters related to the employment practices liability coverage involved with the denied retaliation claim. At the time of the application, SHH had largely resolved the government's improper billing claim. Also, the government's improper billing claim could never be dragged into the D & O coverage period. Because SHH did not intend coverage to apply to the False Claims Act allegations, SHH reasonably read Question 1 not to require January 2017 False Claims Act Investigative Demand disclosure.

2. Application Question 2

---

[52] *Lockhart*, 136 S. Ct. at 963 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).

-11-

Case No. 1:19-cv-2900
Gwin, J.

Application Question 2 asked whether "[SHH], any Subsidiary, any Executive or other entity proposed for coverage kn[ew] of any act, error or omission which could give rise to a claim, suit or action under any coverage part of the proposed policy."[53] SHH indicated that it had no such knowledge.[54]

Allied World argues that Question 2 required disclosure of the January 2017 Investigative Demand because the investigation could have resulted in a claim under the ensuing policy. SHH responds that it did not intend in April 2019 to seek Investigative Demand-described False Claims Act claims coverage, and that it completed the insurance application before knowing that employees had filed accompanying retaliation claims. Therefore, SHH argues, it did not have pre-policy knowledge of any "act, error or omission which could give rise" to a policy claim.

Allied World's responds that if it had been told about the Investigative Demand False Claims Act allegations, Allied World could have surmised related SHH potential liability. But that argument flies in the face of the claims-made policy type.

Any SHH request for Investigative Demand False Claims Act coverage would have been barred by the policy. After all, SHH received notice of the False Claims Act claims in January 2017, more than two years before the April 2019 to April 2020 policy period began, and SHH had largely already settled those claims with the government. For this reason, SHH never sought Allied World coverage for its $10 million government False Claims Act settlement.

---

[53] Doc. 44 at 192.
[54] *Id.*

-12-

Case No. 1:19-cv-2900
Gwin, J.

SHH could have reasonably read Application Question 2 not to require disclosure of the January 2017 Investigative Demand.

### 3. The Application Exclusion

Finally, Allied World argues that the Application Exclusion defeats retaliation claims coverage regardless of whether Questions 1 and 2 required their disclosure. The exclusion provides:

> It is agreed that with respect to questions [1 and 2] . . . if such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), information or involvement exists, then such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), and any inquiry, investigation, administrative charge, claim, or lawsuit arising therefrom or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage.[55]

Emphasizing the word "exists," Allied World argues that the retaliation claims are excluded under the policy because the claims were first made in the November 2016 sealed complaint. Because the retaliation claims already "exist[ed]" when SHH applied for a policy in April 2019, Allied World argues, the claims are barred even if SHH did not know about them.

This argument misses. The Application Exclusion expressly incorporates Question 1 and 2's requirements. This is doubly clear in the exclusion's structure: "It is agreed that with respect to questions [1 and 2] . . . if such inquir[ies] . . . exist[], then such inquir[ies] . . . [are] excluded from the proposed coverage."

First, the phrase "with respect to questions [1 and 2]" expressly incorporates Questions 1 and 2, limiting the exclusion to inquiries the questions covered. Second, the

---

[55] *Id.*

-13-

Case No. 1:19-cv-2900
Gwin, J.

exclusion term "such inquir[ies]" semantically depends on Questions 1 and 2 for meaning. Divorced from Questions 1 and 2, "such inquir[ies]" is missing its necessary referent.

Reading the exclusion with the necessary Question 1 and 2 context shows that Allied World's argument merely kicks the can down the same interpretive road. As already explained, SHH could reasonably read Questions 1 and 2 not to require disclosure of the January 2017 False Claims Act Investigative Demand. The Investigative Demand therefore falls outside the Application Exclusion's use of the term "such inquir[ies]."

Plaintiff SHH reasonably read the Application Exclusion not to bar the employee retaliation claims coverage. SHH is therefore entitled to summary judgment on its monetary and declaratory breach of contract claims.

### B. Good Faith Claim

Plaintiff SHH does not fare so well with respect to its claim that Defendant Allied World breached its good faith duty by denying retaliation claims coverage. In this context, we reverse the insured-friendly interpretive standard driving SHH's breach of contract claim's success. In evaluating whether an insurer breached its good faith duty in administering a policy, the Court asks only whether the insurer had a "reasonable justification" for its actions.[56]

Measured against this backdrop, SHH's breach of good faith claim fails. Much like Allied World, SHH cannot demonstrate the singular reasonableness of its Question 1 and 2 or Application Exclusion reading. Allied World's determination that the Application Exclusion barred coverage does not expose it to liability. Though Allied World's

---

[56] *Zoppo*, 644 N.E.2d at 399–400.

-14-

Case No. 1:19-cv-2900
Gwin, J.

conclusion was ultimately incorrect under the governing standard, it was not unreasonable.[57]

Allied World is entitled to summary judgment on SHH's good faith claim.

### IV. Conclusion

For these reasons, the Court **GRANTS** Plaintiff SHH's motion for partial summary judgment and **GRANTS IN PART** and **DENIES IN PART** Defendant Allied World's motion for summary judgment on all claims.

IT IS SO ORDERED

Dated: November 2, 2020          *s/    James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE

---

[57] *Retail Ventures, Inc.*, 691 F.3d at 834 (citing *Tokles & Son, Inc.*, 605 N.E.2d at 943).

-15-